(109 App. Div. 907)

### SHALL v. OLD FORGE CO.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1905.)

1. MASTER AND SERVANT—COMPENSATION OF EMPLOYÉ.

Evidence on the issue of the compensation agreed on for an employé engaged to improve a building examined, and *held*, that the employé was to receive $5 a day without commissions on the amount of the pay roll for the work.

2. SIMILAR TRANSACTIONS.

On the issue whether an employé employed to improve a building was to receive a commission on the amount of the pay roll for the work in

addition to daily wages, evidence that the employé had previously worked for defendant, and had been paid commissions in addition to the wages, was inadmissible.

3. SAME.
   Evidence that the employé, when working for a third person, had been paid daily wages and commissions was inadmissible.

4. SAME—SELF-SERVING DECLARATIONS.
   Evidence of a conversation between the employé and defendant's paymaster, had at a time the paymaster was paying off the help, to the effect that the employé desired to let his commissions go until the work was done, was inadmissible.

Appeal from Judgment on Report of Referee.

Action by Frank H. Shall, executor of George W. Shall, deceased, against the Old Forge Company. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

C. S. Mereness, for appellant.

Myron G. Bronner, for respondent.

NASH, J. This action is for the foreclosure of a mechanic's lien upon the property of the defendant, the Old Forge Company. The notice of lien was filed by Charles D. West for labor performed and materials furnished in the erection, alteration, and improvement of a hotel and other buildings of the company in the year 1896, and subsequently assigned by West to George W. Shall, the plaintiff's testator. In December, 1895, the four directors of the company, Adams, Garmon, Crosby, and Snyder, with two of the stockholders, J. J. and N. R. Gilbert, met at Baggs Hotel, in the city of Utica, and had a talk on the subject of improving the property of the company at Old Forge, plans for which had been procured. It was agreed at this meeting to employ West as carpenter and builder to do the work, and, besides his own labor, to furnish teams and tools for carrying on the work. There is no question as to any of the items of the claim as found by the referee, except the allowance of 10 per cent. on the pay rolls in addition to the per diem of $5 a day for the labor of West and $4 a day each for his teams. The testimony on behalf of the plaintiff as to the employment and compensation of West is that of Adams, who is a brother-in-law of West, Alexander M. Briggs, whose wife was the tenant of the Old Forge Hotel, and West. The testimony of Adams is that, at the meeting at Baggs Hotel the plans were discussed, and they said, referring to the persons present:

"Mr. West should go on and do the work. They all agreed to that. They asked me what West's price would be, and I told them $5 and a commission. I can't tell which individual asked that. One of them asked what Mr. West's compensation would be, and I said $5 and 10 per cent. on the labor account. Mr. West was then called into the room. I have told all that I recollect before Mr. West was called in. When I told them the price, I said he was to furnish all the tools, and they were to pay the freight out there and back on the tools. After Mr. West came into the room, he explained the plans, and they asked him what he thought it would cost to do it. West said that it would not cost less than $10,000 as the plans indicated. He was then told to go on and prepare to do the work. I cant tell who said that. After West came ~ room, I don't remember as anything further was said about West's · ·sation."

Before that he says West had told him he would want $5 and 10 per cent. on the labor account for the use of his tools. West says he was at the hotel, but was not present at the meeting, except when called in to explain the plans; that they had been together one and one-half to two hours before he was called in. He says:

"I went into the room and saw these men, and the plans were spread out. Mr. Crosby wanted to know about the plans, and I explained it to him. Then they wanted to know the approximate cost of the building, and I gave it to them. I was in there perhaps twenty minutes, and I then retired from the room, and they remained. I went into the office, and after awhile Crosby came out and said: 'They have made up their minds to have you do the work out at Old Forge.' "

He says that when they were coming home from the meeting Adams told him he was to get $5 per day and 10 per cent. on the labor.

Briggs testifies that he was at the meeting at Baggs Hotel. That Mr. Haug, the architect, was there, and showed the plans.

"We all looked them over. Mr. Garmon wanted to know what the improvements would cost, and Mr. Haug said he had an estimate. I think the estimate was $10,000. Mr. Garmon said he would not go over $10,000. Mr. Haug then produced the estimate, and they called Mr. West over to the table—some of them, Dr. Crosby or Adams or Garmon, but I think Mr. Adams—called Mr. West over to where the plans were. The others were all there looking the plans over. Mr. Adams introduced Mr. West to Mr. Garmon and Mr. Crosby. Dr. Crosby asked Mr. West if he thought these repairs could be done for that amount of money. Mr. West told him he had looked the estimate over, and that he thought they could be done for less than $10,000. Mr. Garmon said that if that was so, it would be all right, but that he would not stand for anything that would exceed $10,000; he did not want to lay out any more money than that. They talked it over where they would get the material, and who would get it, and they finally agreed upon Mr. Adams and Mr. West to buy the materials. Mr. Adams said that they had a lot of logs at their mill. He said, 'We have got a mill and the logs.' One of them inquired who was to do the work. Mr. Adams said, 'Mr. West is a contractor and builder, and would be a good man to take charge of this work.' Mr. Garmon said that he had heard of Mr. West. He asked Adams what West charged, and he turned around to Mr. West and said: 'What will you ask a day to go up and take charge of this work?' West said he wanted $5 a day and 10 per cent. of the men's wages for the use of his tools and looking after it."

On his cross-examination he testified:

"I was in the room on that occasion 1½ or 2 hours. That was about the time consumed in that talk. I think I went in with Mr. West, and he was there all the time that I was there."

On behalf of the defendant, Judson J. Gilbert testified:

"My recollection is that Mr. West was in the room several times that day, and Mr. Briggs was during the last of the meeting."

Nelson R. Gilbert, testified:

"Q. Do you recollect that Mr. Adams made a statement at that time on the subject of Mr. West's compensation? A. He did, to the best of my recollection. Q. State what it was? A. I cant state how much a day it would be. I cant tell how much. Mr. Garmon protested there, or that same day, that it was too much. Mr. Adams did not, in my hearing, say that Mr. West would have 10 per cent. or any percentage on the pay roll for the work. Mr. West was in the room at one time during the meeting. Mr. Briggs was in later, I think. While Mr. West was in the room, I cant say anything was said about West's compensation. When Mr. Briggs came in, I think the matter of West's compensation had been disposed of. We talked with him on other matters. I don't recall that I left the room before the rest did."

Snyder testified:

"Q. What was said at that meeting upon the subject of Mr. West's compensation, and by whom? A. Mr. Adams said he had arranged with West to take charge of the work, and I, think I asked Adams, 'What have you got to pay West for the work?' Adams said $5, his regular price. Mr. Garmon instantly stated that 'that is too darned much for any carpenter.' I stated that Mr. West is a first-class man, and that is not too much. Mr. J. J. Gilbert said as I did. Mr. Adams, Mr. Gilbert, and I all said West had worked for us at that rate. There was nothing said that Mr. West was to receive 10 per cent. or anything on the pay roll for the labor. There was nothing said about employing West on these terms. No other terms were stated. Nothing was said to my knowledge on the subject of compensation while West was in the room. There was nothing said on the subject of West's compensation while Briggs was in the room, that I heard."

Crosby testified:

"The meeting lasted from about three o'clock to about five o'clock in the afternoon. I was there during the whole time. That was the meeting where it was determined to make the improvements according to the plans of Mr. Haug. Mr. Garmon asked Mr. Adams what it would cost to have Mr. West take charge of the work, and he said $5 per day. Mr. Garmon objected that we could get a good carpenter for less than that, and in reply to that Mr. Adams suggested that Mr. West had some tools that other carpenters would not have, and it would be better to have a man that had all those things. There was nothing said by Adams or any one else at that meeting or any other meeting about West being employed at $5 a day and 10 per cent. commission. I don't remember West was in the room until after we adjourned. I don't think anything was said when he was present on the subject of his compensation. Mr. Briggs was in the room a short time before or after the talk about Mr. West; I am not certain which. He was not in the room at any time when there was any talk about West's compensation."

Garmon testified:

"I was at the meeting at Baggs Hotel spoken of by the witnesses. At that meeting Mr. Snyder or Mr. Adams said, 'I propose that Mr. West have charge of the work,' and made the statement that he was a very competent man and skilled in building. I asked what pay he would have. The reply was $5 a day. Mr. Adams said that. I said, 'It's too much;' that I could hire dozens of men to take charge of a plain building like that for a good deal less. I think that Mr. Adams and Mr. Snyder said that he was a competent man, and could get more work out of men than any one we could get, and was a man of force and vigor, etc. I think it was Mr. Snyder who said he did have some tools. There was nothing said at that meeting about paying Mr. West 10 per cent. on the pay roll in addition to the $5 a day. I do not remember Mr. West being in the room, but I did not know him then, and he might have been. Mr. Briggs was not in the room when there was any talk about West's compensation at all."

The referee found, as testified to by West, that his wages at $5 a day amounted to $720.50, and his team work amounted to $760.80. In the notice of lien filed by West, which was duly verified, he included 10 per cent. commission in the amount of his per diem wages and team work. On the trial these items were abandoned as a basis of his claim for the 10 per cent. commission.

We are of the opinion that, upon all of the evidence in the case relating to the employment of West, the finding that the defendant promised and agreed to pay, in addition to $5 per day as wages, 10 per cent. of the amount of the pay roll for the work, is erroneous. The plaintiff's case in this behalf rests wholly upon the testimony of Adams Briggs. West himself did not have anything to say, and nothing

was said in his presence at the meeting at Baggs Hotel as to his compensation, and in his notice of lien he made a verified claim for a commission to which confessedly he was not entitled. Adams, Briggs, and West are radically at variance as to what occurred at the Baggs Hotel meeting. West says there was nothing said on the subject of his compensation when he was in the room. Adams says he was asked what West's compensation would be, and he said $5 and 10 per cent. on the labor account. Briggs says Garmon asked Adams what West charged, and that Adams turned around to West and said, "What will you ask a day to go up to take charge of this work"? and West said he wanted $5 a day and 10 per cent. of the men's wages for the use of his tools and looking after it. Adams says he had a talk with West before the meeting, in which West said he would want $5 and 10 per cent. on the labor account. West says they had been together 1½ or 2 hours before he was called into the room. That he was in there perhaps 20 minutes when he retired from the room and they remained. Briggs says:

"I was in the room on that occasion one and one-half or two hours. I think I went in with Mr. West, and he was there all the time I was there."

These contradictory statements as to the essential facts cannot well be regarded as outweighing the positive statements of the two Gilberts and the three other directors, Snyder, Crosby, and Garmon, to the effect that West's compensation was fixed at $5 per day without any agreement for a commission. Both Adams and West were permitted to testify, under defendant's objection and exception, that West had done work on buildings for Adams previous to the employment of West by the defendant, for which Adams had paid him $5 per day and 10 per cent. on the labor. On the cross-examination of defendant's witness Snyder, the plaintiff was permitted, under objection and exception, to prove that for work done by West the Saxony Knitting Mills paid him for his work $5 per day and a percentage in addition, the witness did not remember whether it was 5 per cent. or 10 per cent. West and Bertram F. Adams, who acted as paymaster for the defendant, were permitted to testify, under defendant's objection and exception, that while B. F. Adams was paying off the help on one occasion, he had a talk with West about his compensation, in which Adams says he asked West if he did not get a percentage on the men. West says he said: "Charley, how is it about the percentage; don't that come in now?" And he (West) said, "No; let it go till we get through." These rulings were erroneous, and doubtless the evidence influenced the referee in his finding that the defendant promised and agreed to pay West a commission of 10 per cent. of the amount of the pay roll for the work.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event upon questions of law and fact. All concur.